# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00818-CV

---

### J. M. D., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

---

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-18-003782, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

The trial court held a bench trial and, at the conclusion, signed a final decree terminating J.M.D.'s parental rights to his son "Keith," who was almost two years old.[1] The court found that J.M.D.'s parental rights to another child had been terminated and that he had failed to comply with the provisions of a court order that established actions necessary to regain custody. *See* Tex. Fam. Code § 161.001(b)(1)(M), (O).[2] The court also found that termination of J.M.D.'s parental rights was in Keith's best interest. *See id*. § 161.001(b)(2).

---

[1] We refer to appellant by his initials and to the child and other relevant individuals by aliases. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8. The mother signed an affidavit relinquishing her parental rights; she is not a party to this appeal.

[2] Subsection (M) allows a parent's rights to be terminated if his rights to another child were terminated based on a finding that his conduct violated subsection (D) (conditions that endanger the child) or (E) (conduct that endangered the child). Tex. Fam. Code § 161.001(b)(1)(D), (E), (M).

In June 2018, the Texas Department of Family and Protective Services sought custody after receiving two referrals alleging that Keith was being neglected by his mother, "Susan"; and a third referral alleging that during an incident of domestic violence between Susan and her then-boyfriend (not J.M.D.), Susan shouted for someone to come get the baby, but before anyone could respond, her boyfriend "yelled 'take the fucking baby' and then grabbed [Keith] and threw him onto the floor."   J.M.D. was not present during that incident.

At the final hearing, a Department caseworker testified that Keith has three older siblings—twins who are one year older than Keith and a sister who is two years older.  J.M.D. is the father of the twins but not the oldest girl.  The Department removed the three older children from the parents about six months before Keith was born due to "multiple reports of violence between [Susan] and [J.M.D.] and concerns for significant neglect and abuse" of the three older children.  Before their removal, the three older children were living with J.M.D. at his mother's house with J.M.D. as the primary caretaker, and the infant twins were diagnosed as failing to thrive. In addition, the boy had "open sores that were weeping," and the girl's brain scan "indicated several bleeds . . . consistent with non-accidental injury."  The children were taken into Department care and placed in the same foster home where Keith was later placed.  The parents' rights to the older children were terminated in January 2019.[3]  The foster parents adopted the oldest child and were in the process of trying to adopt the twins.

Keith was born while the earlier case was pending and was removed at about six months old due to concerns about neglect and domestic violence between Susan and her boyfriend.  J.M.D. was not living with Susan and Keith, and the caseworker said that J.M.D.

---

[3] *See J.M.D. v. Department of Family & Protective Servs.*, No. 03-19-00228-CV, 2019 WL 3771806 (Tex. App.—Austin Aug. 9, 2019, pet. denied) (mem. op.).

2

"wasn't really around during" the investigation. After a DNA test established his paternity, J.M.D. was offered services, but his "engagement with services has been limited"—he did not attend therapy or anger management, did not show that he was employed, and failed to take multiple drug tests. He relocated to the Dallas area in mid-2018 but did not inform the Department of the move until the end of November. J.M.D. was first offered weekly visits and then, after his move, monthly visits; since August 2018, he had seen Keith six times in total.

Keith was placed in the same home as his siblings after he was removed from Susan's care, and the caseworker said he was "doing incredibly well," was loved by the foster parents, and was "so bonded with all of his siblings." Keith's CASA volunteer testified that the foster home was "very loving" and "very structured" and that "that's exactly what children need in life." The CASA volunteer testified that the children eat healthful food, have a reliable routine, are "very, very happy," and love being around each other, saying, "I've never seen siblings that are so connected and loved." She had observed some of J.M.D.'s visits with Keith and said that, although J.M.D. tried to soothe Keith, Keith would sometimes scream and cry for the entire visit until he fell asleep or was handed back to his caseworker or one of his foster mothers. She did not believe J.M.D. could handle parenting, saying that at one visit, Keith was "screaming, really screaming. And [J.M.D.] got about this far from [Keith's] face and he yelled, Shut up. You sound like [Susan], just like your baby mama." She said that when she tried to have a discussion with J.M.D. about her role in the case, he "just blew me off and told me he didn't need to talk to me." Keith's foster mothers testified about the bond between the siblings, about the children and how they interact, and about their family routines. They said that they had adopted Keith's oldest sibling, were in the process of adopting the twins, and wanted to adopt Keith as well.

3

Susan signed a relinquishment of her parental rights on the same day as the final hearing. At the conclusion of the hearing, the trial court terminated both Susan's and J.M.D.'s parental rights, telling J.M.D.:

> I don't have any choice, after the evidence I've heard today, but to order that your rights also be terminated under 161.001 M and O. You didn't work your services. You just didn't. Four visits in the last 10 months when your twins' rights were terminated. You should have seen it coming. I can't explain it, and I can't — either you're not getting the messages from your mother or—what really struck me is, you had a cell phone. It went off in court. I don't—and you wouldn't even talk to [the CASA volunteer]. People were trying [to] give you the help to get this little boy back, and you just didn't work your services. You didn't comply. And so I find, unfortunately, that it's in his best interest that your rights be terminated.

The court signed a final decree to that effect, terminating J.M.D.'s parental rights under subsections (M) and (O) and finding that termination was in Keith's best interest, *see* Tex. Fam. Code § 161.001(b)(1)(M), (O), (b)(2); Susan's rights were terminated pursuant to subsection (K), *see id*. § 161.001(b)(1)(K) (termination based on relinquishment of parental rights).

J.M.D.'s court-appointed appellate counsel has filed a brief discussing the record, the elements that the Texas Department of Family and Protective Services was required to prove, the standard of review, and counsel's conclusions that J.M.D. has no arguable grounds for appeal and that his appeal is wholly frivolous. *See Anders v. California*, 386 U.S. 738, 744 (1967); *High v. State*, 573 S.W.2d 807, 811 (Tex. Crim. App. 1978); *see also Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied) (applying *Anders* procedure in appeal from termination of parental rights). Counsel has certified to this Court that he provided J.M.D. a copy of the brief and the appellate record, along with a notice advising him of his right to file a pro se brief. No pro se brief has been filed.

We have thoroughly reviewed the record and counsel's brief, and we agree with counsel's assessment that the appeal is frivolous and without merit. We therefore affirm the trial court's final decree of termination. Counsel's motion to withdraw is denied. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016).[4]

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed:   February 12, 2020

---

[4] The Texas Supreme Court has held that the right to counsel in suits seeking termination of parental rights extends to "all proceedings in [the Texas Supreme Court], including the filing of a petition for review." *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016). Thus, counsel's obligation to J.M.D. has not yet been discharged, and the request to withdraw is premature. *See id*. If after consulting with counsel J.M.D. desires to file a petition for review, counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *Id*. at 27-28.